1

2

3          UNITED STATES DISTRICT COURT

4          NORTHERN DISTRICT OF CALIFORNIA

5

6   In re LOMBARD FLATS, LLC,

7          Debtor.
    _____          No. C 13-4735 PJH
8

9   CHEUK TIN YAN,                            Bankr. Case No. 09-32219 DM

10                Appellant,                  **ORDER AFFIRMING ORDERS
                                              OF THE BANKRUPTCY COURT**
11  v.

12  LOMBARD FLATS, LLC,

13                Appellee.
    _____/
14

15         Appellant Cheuk Tin Yan ("Cheuk Yan") appeals from the bankruptcy court's

16  memorandum opinion and order on motion for order of contempt, entered August 5, 2013,

17  and order denying Cheuk Yan's motion to amend findings, entered September 26, 2013.

18  For the reasons set forth below, the court AFFIRMS the orders of the bankruptcy court.

19                              **BACKGROUND**

20         The following summary of background facts is taken from the record of proceedings

21  before the bankruptcy court and from the pleadings and papers filed in the underlying state

22  court litigation cited by the parties in the present appeal.

23         **1.     Chapter 11 Proceedings**

24         Appellee Lombard Flats, LLC is the reorganized debtor ("debtor") in the bankruptcy

25  proceedings.  Debtor is a California limited liability company that was created December

26  22, 2008 by Martin Eng ("Eng"), the debtor's principal.

27         Appellant Cheuk Yan loaned money to Eng in 2007 and 2008, evidenced by several

28  promissory notes.  From 1985 through January 2009, Eng owned the building at 949-953

Lombard Street, San Francisco (the "property"). On January 26, 2009, Eng recorded a grant deed transferring the property to debtor Lombard Flats, LLC.

Debtor filed for Chapter 11 bankruptcy on August 3, 2009. Eng is the responsible individual. On July 19, 2010, the bankruptcy court confirmed debtor's reorganization plan dated June 12, 2010 (the "plan"). *See* July 19, 2010 Order Confirming Plan (*In re Lombard Flats, LLC*, Bankr. N.D. Cal. No. 09-32219, doc. no. 98). Cheuk Yan was not scheduled as a creditor. The plan noted that as of the August 3, 2009 filing date, numerous liens were recorded against the Lombard Street property in the following order of priority:

Current & Delinquent Real Property Taxes;

Deed of Trust in favor of Washington Mutual granted by Martin Eng;

Deed of Trust in favor of Yin Yin Aung granted by Martin Eng;

Deed of Trust in favor of Sandra Wong assigned to Shirley Chao granted by Martin Eng;

Deed of Trust in favor of Kam Wo Lau granted by Martin Eng;

Judicial Lien in favor of Daniel Wong for judgment against Martin Eng;

Deed of Trust in favor of Jems Investments, LLC granted by Martin Eng;

Deed of Trust in favor of Wayne Eng granted by debtor for no consideration;

Deed of Trust in favor of Pioneer 74 Lots, LLC; Jems Investments, LLC; One Stop Delivery, Inc.; and White Snow Corporation, granted by debtor for no consideration; and

Deed of Trust in favor of Exlon Enterprise; Best Co Investments; Ameriprise Services; Westwood Associates; and Excel Group, granted by debtor for no consideration and pursuant to a fraudulent scheme perpetrated by a third party against Martin Eng.

Plan at 3. *See also* April 23, 2010 Order Valuing Liens. As stated in the plan, the principal of Jems Investments, LLC, was Martin Eng's sister, Joanne Eng; Wayne Eng was Martin Eng's brother; and Pioneer 74 Lots, LLC, One Stop Delivery, Inc., and White Snow Corporation were entities belonging to Martin Eng. *See* Plan at 3. The plan provided a payment plan for debtor to pay the full amount due to JP Morgan Chase as successor to Washington Mutual Bank, and a payment plan to Shirley Chao on an agreed claim. Mark J. Romero, counsel for secured creditor Shirley Chao, was appointed disbursing agent under

2

the plan.  The remaining creditor claims were wholly unsecured and discharged pursuant to the plan; the bankruptcy court entered judgment voiding those liens on January 24, 2011. The bankruptcy court entered a final decree on May 23, 2011, and the bankruptcy case was closed June 3, 2011.

### 2. State Court Litigation

On September 26, 2012, Cheuk Yan filed an action in San Francisco Superior Court against debtor, Eng, Eng's relatives and their closely held companies, seeking recovery on over one million dollars for loans made by Cheuk Yan to Eng in 2007 and 2008.  The state court action alleged a conspiracy to defraud Cheuk Yan, as creditor, by making fraudulent transfers and encumbrances on the Lombard Street property, including a fraudulent conveyance from Eng to debtor.  *Yan v. Lombard Flats, LLC, et al.*, San Francisco Superior Ct. Case. No. CGC 12-524745 (complaint filed Sept. 26, 2012).  Cheuk Yan alleged that he held three promissory notes against Eng, based on loans made for the stated purpose of business expenses related to Eng's real estate portfolio:

(1)     Promissory note by Eng dated October 1, 2007, for $207,429 in principal [comprising "$170,000 promissory note dated May 28, 2007; $5,459 points 3% on $181970 (170,000 + 11970); $11,970 interest ($14470 interest 6/1/07-11/30/07 with $2500 deduction); and $20,000 salary Demas Yan May 15-October 15, 2007"], secured by a deed of trust on property located at 242-248 5th Avenue, San Francisco.  Cheuk Yan alleged that the total amount due on the note, including unpaid principal and accrued interest as of September 25, 2012, was $407,453 (initially alleged to be $414,385.65).

(2)     Promissory note by Eng dated December 1, 2007 (alleged January 15, 2008 in the complaint) for $110,000 in principal (initially alleged to be in the amount of $114,047), secured by a deed of trust on property located at 818, 818A and 820 Green Street, San Francisco.  The amount of unpaid principal and accrued interest as of September 25, 2012, was allegedly $205,045.79 (initially alleged to be $248,005.68).

(3)     Promissory note by Eng dated April 1, 2008 for $122,601.75 in principal (initially alleged to be in the amount of $211,257), secured in the amount of $86,626.75 by the deed of trust on property located at 131 Mendosa Avenue San Francisco.  The amount due on the note, including accrued interest as of September 25, 2012, was alleged to be $287,645.88 (initially alleged to be $449,603.64).

*Yan v. Lombard Flats, LLC, et al.,* Compl. ¶ 9 and Exs. A-C, and Declaration of Cheuk Tin

Yan in Support of Request for Court Judgment filed March 18, 2013.  Cheuk Yan further

alleged that at the time of making the loans, Eng was the sole owner of the property at 949-

953 Lombard Street.  After issuing the promissory notes, Eng formed debtor Lombard

Flats, LLC, of which Eng is the sole member, allegedly without Cheuk Yan's knowledge.

Around January 26, 2009, Eng allegedly transferred title of the Lombard Street property to

debtor without consideration.  Cheuk Yan alleged that debtor has no business purpose

other than to hold title to the Lombard Street property.  *Yan v. Lombard Flats, LLC,* Compl.

¶ 15.

Cheuk Yan's state court complaint alleged that after Eng transferred the property

title to debtor, Eng caused liens and long term residential leases to encumber the Lombard

Street property, without consideration: (1) deed of trust, recorded November 5, 2008, in the

amount of $985,000 to Eng's family member, Wayne Eng; (2) deed of trust, recorded

November 5, 2008, in the amount of $560,000 to Jems Investments, LLC; (3) memorandum

of lease for 99 years (purportedly from March 1, 1989 to February 28, 2078), recorded

March 20, 2009, to White Snow Corporation, Lombard Flats, LLC, and Eng's family

members Thomas Eng, Sau Eng and Joanne Eng; (4) memorandum of lease for 24 years

(from January 1, 1999 to January 1, 2023), recorded April 20, 2009, to Chief Asian, LLC (of

which Eng is allegedly a sole or controlling member); White Snow Corporation; and Joanne,

Thomas and Sao Eng; and (5) deed of trust, recorded January 31, 2012, in the amount of

$580,000 by Lombard Flats, LLC, to Jems Investments, LLC; One Stop Delivery, Inc.;

White Snow Corporation; Kearny Washington, LLC; Chief Asian, LLC; Hong Kong China

Groups of Companies, LLC; Pioneer 74 Lots, LLC; Martin Eng; and family membersShanna

Liu, Thomas Eng, Sau Eng and Joanne Eng.  *Id.* ¶ 15 and Exs. D-F.[1]  Based on these

---

[1]  A copy of Cheuk Yan's state court complaint is attached as Exhibit 1 to Martin Eng's declaration in support of debtor's motion for order of contempt.  Appellant's Appendix A8-A24.  The record contains a copy of the *Yan* complaint that includes only Exhibits A through D, but the court takes judicial notice of the state court docket which shows that the *Yan* complaint also attaches an Exhibit E (24-year lease) and F (deed of trust recorded Jan. 31, 2012).  *See* Appellant's Suppl. RJN (deed of trust recorded Jan. 31, 2012).

United States District Court

For the Northern District of California

allegations, Cheuk Yan sought a cause of action for "conspiracy on fraudulent conveyances" by causing the transfer of the Lombard Street property from Eng to Lombard Flats, LLC, and then encumbering the title to the Lombard Street property with intent to hinder, delay or defraud Cheuk Yan as a creditor. Cheuk Yan's state court complaint did not allege that Lombard Flats had filed for Chapter 11 bankruptcy and that the final decree on the reorganization plan had been entered by the bankruptcy court.

Cheuk Yan initially represented himself in pro per in the state court action. His son, attorney Demas Wai Yan ("Demas Yan"), entered an appearance in the state court action under the name Dennis Yan in a substitution of counsel for Cheuk Yan on January 11, 2013. On or about April 25, 2013, Demas Yan, as Cheuk Yan's attorney, filed a Supplemental Memorandum of Points and Authorities ISO Request for Court Judgment in state court, arguing that Eng was dismissed from the state court action as a defendant without prejudice for strategic reasons but that defendant Lombard Flats, LLC nevertheless remains subject to liability for the tort of conspiracy for fraudulent transfer. Chipser Decl., Ex. 5 (*In re: Lombard Flats, LLC*, Bankr. N.D. Cal. No. 09-32219, doc. no. 136-5).

On May 2, 2013, the state court entered default judgment for Cheuk Yan against debtor Lombard Flats, LLC in the amount of $960,299.59, comprising $900,144.67 in damages and $60,154.92 prejudgment interest. On May 3, 2013, debtor filed a motion in bankruptcy court for an order of contempt against Cheuk Yan and his attorney, as further discussed below. After the bankruptcy court issued its ruling on the motion for order of contempt, Cheuk Yan filed a motion to set aside the judgment entered May 2, 2013 as to Lombard Flats, LLC in the state court action. By order entered December 23, 2013, the state court granted the motion to set aside, and vacated the judgment.

**3.    Debtor's Motion for Order of Contempt**

The bankruptcy case was reopened May 1, 2013 for limited purposes unrelated to the Cheuk Yan matter. While the bankruptcy case was reopened, on May 3, 2013, debtor filed a motion seeking an order of contempt against Cheuk Yan and his attorney, Demas Yan, aka, Dennis Yan, for violating the discharge injunction of 11 U.S.C. §524(a)(2) by,

among other actions, filing the complaint against debtor in state court, for the purpose of

collecting on a pre-petition debt discharged through confirmation of debtor's Chapter 11

Plan by the bankruptcy court.  As a threshold matter in support of a contempt finding,

debtor also sought a determination that the state court judgment against debtor was void

because of debtor's discharge in violation of 11 U.S.C. § 524.

On June 13, 2013, in advance of the hearing on debtor's motion for contempt, the

bankruptcy court entered a tentative ruling:

> DOCKET TEXT ORDER (no separate order issued:)  Tentative
> ruling: From the record it seems clear that Demas Yan had
> knowledge of the Lombard Flats Chapter 11 case in time to file a
> proof of claim for his client, Cheuk Tin Yan.  The fact that Demas Yan
> was not his father['.]s attorney of record is of no consequence; his
> knowledge is imputed to his father and any debt based upon an
> alleged fraudulent transfer has been discharged under 11 USC
> 1141(d)(1)(A).  Thus the state court judgment obtained by Demas
> Yan for his father on May 2, 2013 is void under 11 USC 524(a)(1).
> *See Lone Star Security v. Gurrola (In re Gurrola)*, 328 B.R. 158 (9th
> Cir. BAP 2005).  In fact, Demas Yan is under an affirmative duty to
> set aside the void judgment or face a separate contempt charge.
> *See Eskanos & Adler PC v. Leetien*, 309 F.3d 1210 (9th Cir. 2002).
> That being said, whether either respondent Yan can be held in
> contempt requires a factual inquiry as to their respective knowledge.
> *See Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178 (9th Cir. 2003)
> and *In re Zilog*, 450 F.3d 996 (9th Cir. 2006), and in particular the
> discussion in *Zilog* at pp 1007-09 and notes 13 and 14.  At the
> hearing on June 14 counsel for debtor will need to explain how the
> record supports a contempt order under *Dyer* and *Zilog*[']s high
> burdens of proof; otherwise an evidentiary hearing will be necessary.
> (Montali, Dennis) (Entered: 06/13/2013)

On June 14, 2013, the bankruptcy court held a hearing on the motion for contempt,

at which Demas Yan appeared as counsel for Cheuk Yan.  The bankruptcy court asked

Demas Yan whether he disputed the court's tentative factual findings that Demas Yan had

knowledge of the Chapter 11 proceeding, and that Demas Yan was acting on Cheuk Yan's

behalf as his attorney.  Demas Yan admitted that he was aware of debtor's Chapter 11

proceeding at least by the end of the case, and did not refute the bankruptcy court's

findings, stated at the hearing, that emails from Demas Yan submitted by Martin Eng "make

it pretty obvious" that Demas Yan knew of the bankruptcy and that he was acting on behalf

of his father, Cheuk Yan, as his attorney, although Cheuk Yan had not yet filed a lawsuit.

6

June 14, 2013 Audio File (*In re Lombard Flats, LLC*, Bankr. N.D. Cal. No. 09-32219, doc. no. 148). The bankruptcy court therefore held that the debt to Cheuk Yan was discharged pursuant to section 1141(d), and that the state court judgment was void pursuant to section 524. *Id.* Counsel for the reorganized debtor offered to stipulate that if Cheuk Yan would vacate the state court judgment, debtor would withdraw the motion for contempt and avoid the need for an evidentiary hearing as to contempt. *Id.* Demas Yan declined to so stipulate and sought leave to file supplemental briefing whether formal written notice to a creditor was required, despite the creditor's actual knowledge of the bankruptcy case, for a debt to be discharged under section 1141(d). *Id.* The bankruptcy court granted leave for Cheuk Yan and debtor to file supplemental briefs on the issue of notice, and submit the issues whether the debt was discharged and the state court judgment was void.

On August 5, 2013, the bankruptcy court entered the following findings, and held that Cheuk Yan's claim was discharged and that the state court judgment was void:

> Debtor did not list Cheuk Yan or Demas Yan as creditors in its schedules. Eng admits that he did not inform Debtor's counsel, Ms. Chipser, about Cheuk's claims as he did not believe them to be claims against Debtor. (See paragraph 9 of Eng's initial declaration, Dkt. No. 137). He admits that no notice of the case was given to Cheuk. He also states that "I thought I was doing [Cheuk] a favor by not listing him in this case since he might get almost nothing with or without the bankruptcy. I was concerned that [Cheuk] might ruin the bankruptcy as his son threatened." (See paragraph 11 of Eng's initial declaration).

> A threshold question for the court is whether Cheuk or Demas, his attorney, had knowledge of the Debtor's Chapter 11 case. Demas did, and his knowledge is therefore imputed to Cheuk.

> Demas, in the initial Supplemental Memorandum filed June 22, 2013, in opposition to Debtor's Motion, complains about a denial of due process, citing Supreme Court and Ninth Circuit authority. But those cases deal with known claims, not claims the claimant aided in concealing. For example, in *Levin v. Maya Constr. (In [re] Maya Constr. Co.)* 78 F.3d 1395 (9th Cir. 1996) the court emphasizes the need for formal notice to be given to a "known contingent creditor." Similarly, it was a "known creditor" whose general awareness of a pending Chapter 11 case was insufficient to satisfy due process in *Paging Network, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.)* 534 F.3d 76 (1st Cir. 2008).

> Here, Cheuk's theory of liability of Debtor, and the essence of the Judgment recently obtained against it, is that Eng made, or

conspired with Debtor to make, a fraudulent transfer to Debtor, in derogation of Cheuk's rights as a creditor of Eng. The evidence is unmistakable, however, that Eng did not understand that Cheuk had a fraudulent transfer claim against Debtor. In fact, Eng did not know what a fraudulent conveyance was. See declaration of Martin Eng (Docket No. 137, ¶ 9).

The parties disagree about one related issue. Exhibit 5 to Eng's original declaration is an e-mail he sent on August 18, 2009, after Debtor's Chapter 11 filing, asking Demas if he could transfer the deeds (presumably of the Property) to him but expressing concerns about a fraudulent transfer. Demas, in turn, refers to "Romero" who "has done good research and has proof of all the fraud you [Eng] committed." The "Romero" refers to attorney Mark Romeo, who filed a motion for relief from stay on behalf of a client in Debtor's case (Dkt. No. 16). Eng says that proves that Demas knew of the Chapter 11 filing only days after the case was commenced; Demas puts the matter in issue by contending that his reference to Mr. Romeo had to do with state court litigation against Eng that was pending. The court makes no determination of this disputed fact.

Eng also contends in a supplemental declaration that in 2007 Demas gave him legal advice to put assets into a limited liability company (Dkt. No. 147). He supports that contention with an e-mail dated October 7, 2007, wherein Demas explains the advantages of holding assets in a limited liability company, including shielding those assets from creditors. But Eng assumes too much from that proof. Transferring assets to an LLC is not wrongful if it is not a fraud on creditors. There is no way for the court to know whether a transfer in 2007 would have been a fraudulent transfer.

Demas' knowledge of Debtor's Chapter 11 case a few months later, however, is established by uncontroverted evidence. Specifically, Eng refers in his initial declaration to Exhibit 11, namely an e-mail he sent to Demas on May 22, 2010, asking, "How can you help in a BK plan approval - U.S. Trustee opposing." A review of the case docket shows that on May 21, 2010, the [United] States Trustee objected to confirmation of the plan Eng had caused Debtor to file in this case. Demas has not denied receipt of that e-mail. All he can say that approaches contradicting it is that he had no knowledge of the bankruptcy "until late in 2010." (Dkt. No. 143-3, p.1.)

From the foregoing the court finds that Demas had knowledge of Debtor's Chapter 11 case no later than May 22, 2010, and that, on behalf of his father, Cheuk, he was attempting to obtain title to the Property for himself (no doubt as a separate fraudulent transfer).

In his Memorandum of Points and Authorities (Docket No. 143-1) Demas refers to an Eng e-mail wherein he refers to a prospective fraudulent transfer. But that fraudulent transfer is one that never occurred. In fact, Eng was referring to Demas' foregoing request that the Property be transferred to him or his father, a transfer that was refused. Further, in his Supplemental Declaration, Eng explains the earlier exchange by reciting that he did not know how a fraudulent conveyance operated in a bankruptcy case and that

creditors of the transferor could be creditors in the bankruptcy case of the transferee. "Such legal principles would be beyond my understanding at the time. I have come to understand those legal principles now."

One issue that troubles the court is a factual dispute as to whether or not Demas instructed Eng to exclude his father's debt from the Debtor's Chapter 11 filing. In his own declaration, Eng states at paragraph 10 that "Demas Yan told me to file the Lombard Flats Chapter 11 without listing his father's debt. Also, while acting as my lawyer in other matters, Demas Yan convinced me that I was going to lose Lombard and would be liquidated, so I had nothing to lose by not listing his father's debt.["]

In Demas' declaration in opposition, he states: "I did not tell Eng to file Debtor's bankruptcy without listing creditor's debt." This controverts the following statement made by Eng in his supplemental response:

> Demas . . . persuaded Martin Eng, a legally unsophisticated person, not to advise bankruptcy counsel of Yan's claim, so that, later, the lawyer could assert that no notice was received and that the claim was not discharged because formal notice was not given.

What is uncontroverted, however, is Eng's statement in his original declaration at 4:24-27:

> Also, while acting as lawyer in other matters, Demas then convinced me that I was going to lose Lombard and would be liquidated, so I had nothing to lose by not listing his father's debt.

There is a clear factual pattern with the following critical ingredients: Eng's personal lawyer, Demas, had knowledge of the Chapter 11 case well before the operative plan that was ultimately confirmed was filed; Demas' knowledge of the case is chargeable to his father and client, Cheuk; Eng did not know of fraudulent transfers generally or that Debtor could be liable as a fraudulent transferee; Demas had a hand in making sure that Debtor did not list Cheuk as a creditor or otherwise disclose the existence of a fraudulent transfer liability.

The authorities cited by Demas in support of his due process argument involve a failure to identify known claims. Where Eng did not know of the existence of a claim when in fact the representative of the claimant did know of the claim and of the underlying bankruptcy, it is sufficient to estop the creditor from claiming a denial of due process when he had much to do with the process of obscuring the existence of the claim.

From the foregoing the court concludes that Debtor's motion is well taken, that the Judgment was obtained in violation of Debtor's discharge under 11 U.S.C. § 1141(d)(1)(a), and thus is void under 11 U.S.C. § 524(a)(1). See *Lonestar Security v. Gurrola (In re Gurrola)*,

328 B.R. [1]58 (9th Cir. BAP 2005). Thus Cheuk, through Demas his attorney, is under an affirmative duty to set aside that void judgment or face contempt. *Esknos & Adler PC v. Leetien*, 309 F.3d 1210 (9th Cir. 2002).

Aug. 5, 2013 Memorandum Decision ("Mem. Dec.") at 3-7 (*In re Lombard Flats, LLC*, Bankr. N.D. Cal. No. 09-32219, doc. no. 151).

On August 14, 2013, Cheuk Yan filed a motion to amend the findings and order on the motion for contempt. On September 20, 2013, the bankruptcy court held a hearing on the motion to amend and denied the motion.

## ISSUES PRESENTED

Cheuk Yan presents the following issues on appeal:

(1) whether the bankruptcy court has subject matter jurisdiction over Cheuk Yan's state court action;

(2) whether formal notice of bankruptcy proceeding is required for Cheuk Yan's claims to be discharged;

(3) whether there is sufficient evidence to support the bankruptcy court's finding of estoppel as against Cheuk Yan.

## STANDARD OF REVIEW

The court reviews the bankruptcy court's conclusions of law de novo. *Citibank v. Eshai (In re Eshai)*, 87 F.3d 1082, 1086 (9th Cir. 1996). Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses. Fed. R. Bankr. P. 8013. A factual finding is clearly erroneous if, after examining the evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985).

The availability of estoppel doctrines to circumvent the statutory effect of the bankruptcy discharge is a question of law that is reviewed de novo. *Lone Star Security & Video, Inc. v. Paul Michael Gurrola (In re Gurrola)*, 328 B.R. 158, 162 (9th Cir. BAP 2005) (citing *Alary Corp. v. Sims (In re Associated Vintage Group, Inc.)*, 283 B.R. 549, 554 (9th

10

Cir. BAP 2002)).  Once it is determined that estoppel is available as a matter of law, the decision whether to apply a particular estoppel doctrine is reviewed for abuse of discretion. *Id.* at 162-63 (citing *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 780 (9th Cir. 2001)).

**DISCUSSION**

**A.     Legal Standard**

Bankruptcy Code § 524(a) provides in part as follows:

**§ 524. Effect of discharge**

(a) A discharge in a case under this title -

> (1)     voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

> (2)     operates as an injunction against the commencement or continuation of an action, the employment for process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; . . . .

11 U.S.C. § 524(a).  The bankruptcy discharge releases the debtor from liability on debts and enjoins any creditor's effort to collect a discharged debt as a liability of the debtor.  *See In re Gurrola*, 328 B.R. at 163-64, 175 ("judgments and acts in violation of the [discharge] injunction are automatically void ab initio, hence self-executing, for the same reasons as the automatic stay").

Section 1141(d)(1) provides that the order confirming the Chapter 11 plan "discharges the debtor from any debt that arose before the date of such confirmation . . . whether or not (i) a proof of the claim based on such debt is filed or deemed filed under Section 501 of this title; (ii) such claim is allowed under section 502 of this title; or (iii) the holder of such claim has accepted the plan . . . ."  11 U.S.C. § 1141(d)(1).  A claim is defined by the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5)(A).  For

11

purposes of the discharge in bankruptcy, a claim arises at the time of the events giving rise to the claim, not at the time plaintiff is first able to file suit on the claim. *In re Heilman*, 430 B.R. 213, 219-20 (9th Cir. BAP 2010) (citing *O'Loghlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir. 2000)) (internal quotation marks omitted). "A claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law." *In re Heilman*, 430 B.R. at 220 (citation and internal quotation marks omitted). A bankruptcy court's confirmation is a final binding order, accorded full res judicata effect and precludes the raising of issues which could or should have been raised during the pendency of the case. *Heritage Hotel Ltd. Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I)*, 160 B.R. 374, 377 (9th Cir. BAP 1993), *aff'd*, 59 F.3d 175 (9th Cir. 1995); *accord Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995).

Notwithstanding the broad language of 11 U.S.C. § 1141(d), due process demands that a creditor in a Chapter 11 case receive reasonable notice of a claims bar date before it is effective against the creditor. *City of New York v. New York, New Haven & Hartford Railroad Co.*, 344 U.S. 293, 297 (1953). The Supreme Court has held that "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950) (citing *Milliken v. Meyer*, 311 U.S. 457 (1940)). In determining the constitutional adequacy of notice, the Supreme Court has held that "whether a particular method of notice is reasonable depends upon the particular circumstances." *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 484 (1988) (citing *Mullane*, 339 U.S. at 314).

**B.      Bankruptcy Court Jurisdiction**

Cheuk Yan challenges the jurisdiction of the bankruptcy court to discharge the debt and declare the state court judgment against debtor void. He contends that his cause of

action for "conspiracy on fraudulent conveyances" is a post-confirmation claim that is not subject to discharge.

### 1. "Related To" Jurisdiction

District courts have subject matter jurisdiction over proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Title 28 U.S.C. § 157(a) allows district courts to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy court judges in that district. "A bankruptcy court's 'related to' jurisdiction is very broad, including nearly every matter directly or indirectly related to the bankruptcy." *In re Wilshire Courtyard*, 729 F.3d 1279, 1287 (9th Cir. 2013) (citing *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868 (9th Cir. 2005)) (internal quotation marks omitted). To determine the scope of bankruptcy court's post-confirmation 'related to' jurisdiction, the Ninth Circuit applies the "close nexus" test, which "encompasses matters affecting the 'interpretation, implementation, consummation, execution, or administration of the confirmed plan.'" *Id.* (quoting *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189, 1194 (9th Cir. 2005)) (internal quotation marks omitted).

Furthermore, section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Ninth Circuit has recognized that "section 105 permits the court to issue both preliminary and permanent injunctions after confirmation of a plan to protect the debtor and the administration of the bankruptcy estate." *Am. Hardwoods, Inc. v. Deutsche Credit Corp. (In re Am. Hardwoods, Inc.)*, 885 F.2d 621, 624-25 (9th Cir. 1989) (citations omitted).

Applying the close nexus test to the post-confirmation proceedings at issue here, Cheuk Yan's state court judgment against debtor affected the execution and administration of the reorganization plan. The bankruptcy court was therefore well within its jurisdiction to determine whether Cheuk Yan's state court judgment violated the discharge injunction by

13

1    operation of § 524(a), and to order Cheuk Yan and his attorney, Demas Yan, to vacate the

2    state court judgment as void, or face a motion for contempt.

3         **2.      Conspiracy Theory Is Premised on Pre-petition Claim**

4         As a threshold matter, the bankruptcy court determined that Cheuk Yan's fraudulent

5    transfer claim against debtor was a pre-petition claim.  The record reflects that Eng

6    transferred the property to debtor in January 2009, and debtor filed the Chapter 11 petition

7    on August 3, 2009.  Cheuk Yan's claim against debtor for fraudulent transfer thus arose

8    before the petition was filed.  *See In re Heilman*, 430 B.R. at 220 ("claim arises when a

9    claimant can fairly or reasonably contemplate the claim's existence even if a cause of

10   action has not yet accrued under nonbankruptcy law").  Notwithstanding Eng's statements

11   that he did not understand that Cheuk Yan "may have had claims for a fraudulent

12   conveyance against both me and the Debtor," Eng. Decl. ¶ 9, the parties appear to agree

13   that Cheuk Yan's claim against debtor for fraudulent transfer was a pre-petition claim.[2]

14   Appellant's Reply Br. at 4 ("At least Eng was put on notice of a contingent claim even if he

15   did not know the true nature of the claim."); Appellee's Responsive Br. at 14 ("if Appellant

16   had any claim against Appellee, it would be for a fraudulent conveyance from Martin Eng,

17   and that claim existed prior to Appellee's filing Chapter 11").

18        Although the alleged fraudulent transfer to debtor arose pre-petition, Cheuk Yan

19   contends that his state court claim for conspiracy to conduct fraudulent conveyances arose

20   post-confirmation, because the last overt act was committed in 2012 when debtor created a

21   lien on the Lombard Street property without consideration in favor of Eng, his relatives and

22   their closely held companies.  Appellant Opening Br. at 5.  Cheuk Yan submits a deed of

23   trust, recorded on January 31, 2012, that purports to grant property in San Francisco from

24   grantor Lombard Flats, LLC to twelve grantees, including Eng.  Appellant's Suppl. RJN.  On

25   its face, the deed of trust does not include a description of the property, referring to an

26   ───────────────────

27        [2]      Eng's statements that he did not understand that Cheuk Yan may have had
     fraudulent transfer claims against debtor are discussed further below in the determination
28   whether Cheuk Yan was a known creditor entitled to formal notice of the bankruptcy, *infra*,
     § C.2.

Exhibit A that is not attached. However, Cheuk Yan refers to the assessor's parcel number ("APN") in the caption that identifies the property described as "Lot 021, Block 072" at 949-953 Lombard Street. Appellant Reply Br. at 5. He contends that "[e]ven if the deed of trust did not constitute a lien on the property as appellee asserts, it nonetheless creates a cloud on the Property and is an overt act of fraudulent intent." *Id.* Cheuk Yan therefore argues that his conspiracy claim is a post-confirmation claim that is not subject to the jurisdiction of the bankruptcy court, or, in the alternative, was unforeseeable and cannot be discharged as a prepetition claim.

Debtor responds that no purported overt act in furtherance of the conspiracy occurred in 2012, noting that the January 31, 2012 deed of trust is not in the Lot Book Guarantee because it does not constitute a lien against debtor's property. Appellee's Responsive Br. at 14. Debtor presented the bankruptcy court with the Lot Book Guarantee of the title to the property, showing all the deeds of trust and other liens recorded against the property and the judgment voiding liens that was issued pursuant to the terms of debtor's confirmed reorganization plan. Chipser Decl. (Sept. 6, 2013) ¶ 2 and attachment. The guarantee, which appears to be current through September 5, 2013, shows that eight deeds of trust were recorded against the property, the most recent deed of trust being dated March 20, 2009. Other than the liens held by JP Morgan Chase and secured creditor Shirley Chao, the unsecured liens on the title were stripped off pursuant to the plan. *See* Jan. 24, 2011 Judgment Voiding Liens. As Joan Chipser, counsel for debtor, explained at the September 20, 2013, hearing on Cheuk Yan's motion to amend findings and order entered August 5, 2013, the purported deed of trust dated January 2012 was not recorded against the property, does not describe the property of debtor, and has no effect on debtor's title.[3] Although the parties did not provide the court with a transcript of that hearing, the audio file is part of the bankruptcy court record and transcribed in part here:

---

[3]     Cheuk Yan submits a copy of the January 2012 deed of trust and a public records search result showing that a deed of trust was recorded, but fails to demonstrate that the deed of trust effected a lien or encumbrance against debtor's property. *See* Appellant's Suppl. RJN.

| | | |
|---|---|---|
| 1 | Chipser: | . . . [Mr. Yan] seems to be hanging a lot of his argument on this January 31, 2012 deed of trust, which as you can see from the lot book guarantee that we filed had [ ] no effect on the title to Lombard Flats. And if you look at the property description of that deed of trust, it's not even the Lombard Flats property description. The document is totally a wild deed out there. . . . That one didn't exist at the time. . . . The plan was in 2010, this is in 2012. The document has absolutely no effect, whatever its intent was. As I say, the property description attached to it isn't even the property of the debtor. It has no effect on the debtor's title. It's just nothing. [ ] It's not a fraudulent transfer of anything. I think Mr. Yan's argument is sort of based on that. |
| 8 | Court: | Your argument in the papers is that in any event when he proceeded in state court, he was acting on a debt that had been discharged. [ ] Therefore there was no entitlement to bring the action in the first place. |
| 11 | Chipser: | Exactly. That's absolutely right. . . . |
| 12 | Court: | Mr. Yan, I think I understand your theory, I simply don't think it holds up under legal analysis. . . . I made a factual determination . . . I made the legal analysis that the debt was discharged, and consistent with that analysis, the fact that you somehow based this conspiracy theory on something that happened in 2012, it simply doesn't hold up to create a liability of Lombard Flats under this theory. Because, to restate it, if indeed these liens were fraudulent transfers, the remedy is not to impose liability on the transferor. And if you somehow think there's a different result under some kind of a conspiracy theory I just don't accept it. The fundamental reason in part is because the debt that you are suing on was discharged for the reason I stated in my prior decision. . . . I'm gonna deny the motion to amend. I already told you I believe without any reservation that there is jurisdiction. . . . Ms. Chipser and the debtor have chosen not to press the contempt and I'm expecting that your client will comply with my order and vacate the judgment. And if you don't, I guess we'll meet again under a contempt motion. |
| 23 | Yan: | Your honor said that the so-called claim was discharged. But . . . I don't need to base the state court action on a conspiracy that spans a period that covers both pre- and post-petition. The Lombard Flats, LLC could commit post-petition torts of fraudulent transfer. |
| 26 | Court: | Then sue the transferees. That's my point. If Lombard Flats made a post-petition transfer that was fraudulent, the remedy for the creditor who is defrauded is to sue the transferee, not the transferor. |

16

| | | |
|---|---|---|
| 1 | Yan: | But the superior court judge has already determined that the transferor is liable. |
| 2 | | |
| 3 | Ct: | And I've determined that that judgment is void as a matter of bankruptcy law. So you are instructed and ordered to file the necessary documents to vacate that judgment. . . . |
| 4 | | |

Sept. 20, 2013 Audio File (*In re Lombard Flats, LLC*, Bankr. N.D. Cal. No. 09-32219 DM, doc. no. 157).

In this case, Cheuk Eng's conspiracy theory of liability against debtor is premised on Eng's debt to Cheuk Yan and the allegation of a fraudulent transfer by Eng to debtor in 2009. Cheuk Yan argues that he could not have foreseen the fraudulent nature of the 2009 transfer from Eng to debtor, a newly created LLC, where the fraudulent intent was not evident until 2012 when debtor recorded the purported deed of trust in favor of Eng and third parties without consideration. Appellant's Opening Br. at 5 (citing *In re Hexcel Corp.*, 239 B.R. 564, 567 (N.D. Cal. 1999) ("Any future, unknown claim that could not have been reasonably contemplated does not fall within the purview of section 101(5) and must not be discharged, even if the conduct giving rise to the claim took place before the bankruptcy proceedings.")). However, debtor's potential liability for fraudulent transfer, which was triggered by the transfer of property from Eng to debtor in January 2009, was "reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred." *In re Hexcel Corp.*, 239 B.R. at 567 (citing *In re Dill*, 731 F.2d 629, 631 (9th Cir. 1984)) (internal citations and quotation marks omitted). *See Cool Fuel, Incorporated, a California corporation v. Board of Equalization of the State of California (In re Cool Fuel, Inc.)*, 210 F.3d 999, 1006 (9th Cir. 2000) ("It is well-established that a claim is ripe as an allowable claim in a bankruptcy proceeding even if it is a cause of action that has not yet accrued."). Cheuk Yan's fraudulent transfer claim against debtor was, therefore, a pre-petition claim, within the meaning of 11 U.S.C. § 101(5)(A), that was subject to discharge pursuant to 11 U.S.C. § 1141.

The record supports the bankruptcy court's determination that the debt on which Cheuk Yan sued debtor in state court had been discharged and there was no legal basis

for creating another basis of liability on a conspiracy theory. With respect to the alleged

fraudulent transfer in 2012, the evidence demonstrates that the APN of the Lombard Street

property (Lot 48, Block 72), does not match the APN indicated on the purported deed of

trust ("Lot 021, Block 0072") that was recorded January 31, 2012. *See* April 23, 2010

Order Valuing Liens, Ex. A ((*In re Lombard Flats, LLC*, Bankr. N.D. Cal. No. 09-32219, doc.

no. 73). Thus, the 2012 deed of trust did not effect any transfer, fraudulent or otherwise.

Cheuk Yan argues on appeal that whether or not the deed of trust constitutes a lien

against the debtor's property, debtor's attempt to transfer the property to Eng, and the

eleven other grantees, constitutes an overt act that demonstrates fraudulent intent in the

initial transfer of the property from Eng to debtor in 2009. He argues generally that

conspiracy for fraudulent conveyance is a recognized tort, suggesting that the conspiracy,

standing alone, gives rise to liability against debtor. Appellant's Reply Br. at 4 (citing *Taylor

v. S & M Lamp Co.*, 190 Cal. App. 2d 700 (1961)). Under California law, however,

"[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons

who, although not actually committing a tort themselves, share with the immediate

tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton

Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994). "Standing alone, a conspiracy does no

harm and engenders no tort liability. It must be activated by the commission of an actual

tort." *Id.* at 511. *See also Wyatt v. Union Mortgage Co.*, 24 Cal. 3d 773, 787 (1979)

(recognizing that a civil conspiracy "is neither a punishable offense standing alone nor a

wrong capable of supporting a cause of action by its own weight").

Here, the record demonstrates that the 2012 deed of trust did not effect any transfer

of a property interest by debtor, and cannot be construed as an "actual tort." As debtor

points out, the 2012 deed of trust is not recorded against the title, and the most recent lien

against the property that could be construed as an "actual tort," or fraudulent transfer by

debtor, was a deed of trust recorded on March 20, 2009, prior to the August 3, 2009 filing of

the Chapter 11 petition. Sept. 6, 2013 Chipser Decl. ¶ 2 and attachment (*In re Lombard*

*Flats, LLC*, Bankr. N.D. Cal. No. 09-32219, doc. no. 155). That lien was stripped off by the January 25, 2011 judgment voiding liens, which is recorded in the title records.

As the bankruptcy court articulated, Cheuk Yan's conspiracy theory in the state court action is "convoluted" because it relies on two levels of fraudulent transfers: (1) fraudulent transfer in January 2009 from Eng to debtor as the transferee, and (2) fraudulent transfers by debtor as the transferor by creating liens on the property, including the purported 2012 deed of trust. The bankruptcy court noted that Eng, not debtor, owed the debt to Cheuk Yan. Under Cheuk Yan's conspiracy theory, the alleged scheme to defraud him began with the January 2009 grant deed from Eng to debtor. However, Cheuk Yan's fraudulent transfer claim against debtor based on that 2009 grant deed was discharged. Thus, Cheuk Yan had no basis to assert liability against debtor for the second level of alleged fraudulent transfers by debtor to the lienholders.

The bankruptcy court further reasoned that there was no basis for Cheuk Yan to assert fraudulent transfer liability against debtor (as the transferor) for any lien recorded against the property, because the appropriate remedy for fraudulent post-petition transfers would be to sue the transferees, not the transferor. Sept. 20, 2013 Audio File. That is, even if Cheuk Yan were a creditor of Lombard Flats, LLC, the remedy under his state law conspiracy theory would be to sue the alleged transferees. A California court of appeal recently articulated that conspiracy to fraudulently transfer property from a debtor to third parties does not entitle a creditor to recover a money judgment against the debtor for the amount that was fraudulently transferred, much less a money judgment where no fraudulent transfer actually occurs. *Renda v. Nevarez*, 223 Cal. App. 4th 1231, 1238-40 (2014) ("'Whether defendants conspired to [fraudulently transfer property] has no effect on the judgment: the transfers were fraudulent and plaintiff was entitled to relief.'") (quoting *Filip v. Bucurenciu*, 129 Cal.App.4th 825, 840 (2005)). Although the court in *Renda* addressed a claim under the Uniform Fraudulent Transfer Act ("UFTA"), Cal. Civ. Code, §§ 3439–3439.12, which was not asserted by Cheuk Yan, the court noted the limited holding of *Taylor*, on which Cheuk Yan relies for his conspiracy theory of liability:

> In *Taylor*, *supra*, 190 Cal. App. 2d 700, 12 Cal. Rptr. 323, the plaintiff, a judgment creditor, alleged the defendant conspired with judgment debtors to conceal assets for the purpose of preventing the plaintiff from recovering on his judgment. (*Id.* at p. 705, 12 Cal.Rptr. 323.) The court held the allegations stated a tort claim for damages against the defendant. (Id. at p. 706, 12 Cal.Rptr. 323.) But in *Taylor*, there was no allegation of a fraudulent transfer of assets, and the plaintiff asserted no claim against the judgment debtors, who were not even parties to the case. **The *Taylor* court thus had no occasion to consider whether a creditor may obtain a money judgment against a debtor for the amount of fraudulent transfers the debtor made to impede the creditor's collection of a prior judgment against the debtor.**

*Renda*, 223 Cal. App. 4th at 1240 (emphasis added).

In *Renda*, the court of appeal recognized that the appropriate relief for a claim that a debtor fraudulently transferred property to third parties was a judgment setting aside the transfers and authorizing sale of the transferred properties to satisfy the creditor's underlying judgment against the debtor who made the fraudulent transfers. *Renda*, 223 Cal. App. 4th at 1240 (citing *Filip*, 129 Cal. App. 4th at 832). Thus, as the bankruptcy court explained to Cheuk Yan's attorney at the September 20, 2013 hearing, if the 2012 purported deed of trust was indeed a fraudulent transfer by debtor, the creditor's remedy is not to enter money judgment against the transferor (i.e., debtor), but to sue the transferees. Notably, one of the purported transferees under this 2012 deed of trust is Eng, who owes the debt to Cheuk Yan in the first place. As the bankruptcy court also made clear, Eng is not protected by debtor's Chapter 11 plan; thus, the discharge injunction does not bar Cheuk Yan from seeking relief against Eng personally.

The bankruptcy court correctly held that any fraudulent transfer claim based on Eng's debt that Cheuk Yan may have had against debtor was a pre-petition claim that was discharged. The conspiracy theory asserted in Cheuk Yan's state court action, alleging post-confirmation overt acts, does not render his fraudulent transfer claim "unknown" or "unforeseeable" at the time that Eng transferred the property to debtor, when the claim was "reasonably contemplated." *In re Hexcel Corp.*, 239 B.R. at 567. Cheuk Yan's conspiracy allegations do not, therefore, convert his pre-petition fraudulent transfer claim against debtor into a post-confirmation claim that is not subject to discharge. Thus, the bankruptcy

20

court properly exercised jurisdiction over Cheuk Yan's state court action, to determine whether it violated the discharge injunction.

**C.     Notice Requirement for Discharge**

Cheuk Yan challenges the bankruptcy court's finding that he was not a known creditor, and therefore not entitled to formal notice of the bankruptcy.

> **1.     Notice Requirements**

"For notice purposes, bankruptcy law distinguishes between known creditors, who are entitled to receive direct notice of each stage in the reorganization proceedings, and 'unknown creditors,' for whom publication notice is sufficient." *In re Arch Wireless, Inc.*, 534 F.3d 76, 80 (1st Cir. 2008) (citing *City of New York*, 344 U.S. at 296). In *Monster Content, LLC v. HOMES.COM, Inc.,* 331 B.R. 438, 442 (N.D. Cal. 2005), the court articulated the distinction between known and unknown creditors:

> As characterized by the Supreme Court, a "known" creditor is one whose identity is either known or "reasonably ascertainable by the debtor." *Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 490 (1988). An "unknown" creditor is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane*, 339 U.S. at 317.
>
> A creditor's identity is "reasonably ascertainable" if that creditor can be identified through "reasonably diligent efforts." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n. 4 (1983). Reasonable diligence does not require "impracticable and extended searches . . . in the name of due process." *Mullane*, 339 U.S. at 317. A debtor does not have a "duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it." *Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.)*, 125 B.R. 650, 654 (M.D. Fla.1991). *See also Trump Taj Mahal Assocs. v. O'Hara (In re Trump Taj Mahal Assocs.)*, 1993 WL 534494, 1993 U.S. Dist. LEXIS 17827 (D.N.J. Dec. 13, 1993) (explaining that "those creditors who hold only conceivable, conjectural or speculative claims" are unknown).

*Monster Content*, 331 B.R. at 442.

"The debtor lists the creditors, so it is the debtor's knowledge of a creditor, not the creditor's knowledge of his claim, which controls whether the debtor has a duty to list that creditor." *In re Maya Const. Co.*, 78 F.3d 1395, 1398 (9th Cir. 1996). "A debtor must list a creditor whose identity and claim he knows. The burden is on the debtor to cause formal

notice to be given; the creditor who is not given notice, even if he has actual knowledge of reorganization proceedings, does not have a duty to investigate and inject himself into the proceedings." *Id.* at 1399 (citing 11 U.S.C. § 521).

Under Ninth Circuit authority, a known creditor is entitled to formal notice of a Chapter 11 bankruptcy and claims date in order for him to be bound by a discharge order. *In re Maya Constr. Co.,* 78 F.3d 1395, 1398-99 (9th Cir. 1996). "A debtor must list a creditor whose identity and claim he knows. The burden is on the debtor to cause formal notice to be given; the creditor who is not given notice, even if he has actual knowledge of reorganization proceedings, does not have a duty to investigate and inject himself into the proceedings." *Id.* (citing 11 U.S.C. § 521). "Generally, if a known contingent creditor is not given formal notice, he is not bound by an order discharging the bankruptcy's obligations. The fact that a creditor has actual knowledge that a Chapter 11 bankruptcy proceeding is going forward involving a debtor does not obviate the need for notice." *Id.* at 1399 (citing *City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 296-97 (1953)). In holding that formal notice of a Chapter 11 proceeding to a known creditor is required for discharge, the court in *In re Maya* distinguished Chapter 7 and 13 proceedings, in which the time to file proofs of claim is triggered by the creditors meeting, whereas the bar date in Chapter 11 cases is not set by operation of the Bankruptcy Rules but must be set by the bankruptcy court, such that formal notice of a bar date is necessary. *Id.* at 1399 (even if the creditor had received notice of the Chapter 11 bankruptcy or creditor's meeting, "he still would not have known when the deadline for filing proofs of claims was, and therefore, cannot be said to have been given any notice").

**2. Cheuk Yan Was a Known Creditor Entitled to Formal Notice of Chapter 11 Proceedings**

It is undisputed that debtor did not list Cheuk Yan as a creditor and that Cheuk Yan did not receive formal notice of the bankruptcy proceedings. The parties dispute whether Cheuk Yan was a known creditor entitled to formal notice of the bankruptcy and the claims bar date, or an unknown creditor who was not entitled to formal notice. The bankruptcy

court determined that Cheuk Yan was not a known creditor, finding that the evidence was "unmistakable [ ] that Eng did not understand that Cheuk had a fraudulent transfer claim against Debtor," based on Cheuk Yan's theory that Eng made a fraudulent transfer of the Lombard property to debtor, or that debtor conspired with Eng in the fraudulent transfer, in derogation of Cheuk Yan's rights as a creditor of Eng. Aug. 5, 2013 Mem. Dec. at 4.

Cheuk Yan contends that the bankruptcy court erred in finding that Eng did not inform debtor's counsel about Cheuk Yan's claims against him because he did not believe them to be claims against debtor, and that Eng did not even know what a fraudulent conveyance was. *Id. See* May 3, 2013 Eng Decl. ¶ 9 (*In re Lombard Flats, LLC*, Bankr. N.D. Cal. No. 09-32219, doc. no. 137). To clarify this statement, Eng submitted a supplemental declaration stating that "I did not know how a fraudulent conveyance operates in a bankruptcy case and that creditors of the transferor could be a creditor in the bankruptcy case of a transferee. Such legal principles were beyond my understanding at the time. I have come to understand those legal principles now." June 6, 2013 Suppl. Eng Decl. ¶ 3 (*In re Lombard Flats, LLC*, Bankr. N.D. Cal. No. 09-32219, doc. no. 145).

Eng's statements that he did not believe Cheuk Yan had claims against debtor conflict with his statements that his attorney, Demas Yan, asked Eng to omit Cheuk Yan's claims from the bankruptcy proceedings and that Eng thought he was helping Cheuk Yan by omitting his claim. Eng Decl. ¶¶ 10, 11. The bankruptcy court found that Eng admitted that he did not provide Cheuk Yan with formal notice of the bankruptcy case: "I thought I was doing [Cheuk] a favor by not listing him in this case since he might get almost nothing with or without the bankruptcy. I was concerned that [Cheuk] might ruin the bankruptcy as his son threatened." Aug. 5, 2013 Mem. Dec. at 3 (quoting Eng Decl. ¶ 11). Although Cheuk Yan disputes Eng's contention that Demas Yan instructed him not to list Cheuk Yan as a creditor, he argues, in the alternative, that if Demas Yan did indeed convince Eng to conceal Cheuk Yan's claims from the bankruptcy, then, at a minimum, Cheuk Yan's claims were reasonably ascertainable by debtor and Cheuk Yan was a known creditor entitled to formal notice.

23

The evidence shows that Eng understood that Cheuk Yan had a claim against debtor, believing that he was doing Cheuk Yan a favor by not listing him as a creditor.  The evidence also shows that Eng discussed his debt with Demas Yan, who was not only Eng's attorney, but also Cheuk Yan's attorney and son.  The emails submitted by Eng, as well as Eng's declarations, demonstrate that Demas Yan was Eng's personal attorney whose law office was located in a building owned by Eng and that they saw each other almost every day and discussed Eng's financial affairs.  An email dated May 22, 2010, shows that Eng communicated with Demas Yan about debtor's Chapter 11 case sometime before confirmation of the plan.  Demas Yan does not dispute the authenticity of the email communications, submitted by Eng, showing that Demas Yan demanded, one month before debtor Lombard Flats LLC was formed, that Eng either "sign the DEED that I have already given to you," or transfer title of 949 Lombard to Demas Yan, indicating that "If you don't give me the deed, I will file BK for you because I will not let you lose anymore [sic] property by foreclosure.  Eng Decl., Exs. 3,  4 (emails dated November 9 and 10, 2008).  In the email dated August 18, 2009, Demas Yan suggested that "the assignment will help your family and you, otherwise the court will throw your — out of court," although it is not evident from the email exhibits to what assignment Demas Yan was referring.  *Id.*, Ex. 5.  Though Demas Yan challenges Eng's credibility generally,[4]  he does not dispute Eng's contention that in 2008 and 2009, Demas Yan demanded that Eng repay Cheuk Yan's loans and transfer of the Lombard Street property to Demas or Cheuk Yan, as evidenced by the emails.

In light of this record, Cheuk Yan was a known creditor whose identity was reasonably ascertainable at the time debtor filed for Chapter 11, and the bankruptcy court's

---

[4]     Demas Yan contends that Eng forged his signature on a Notice of Pendency of Action, filed in a state court action, but he does not contend that the email communications attached to Eng's declaration are falsified.  The court therefore declines to take judicial notice of the orders declaring Eng to be a vexatious litigant which were not part of the record before the bankruptcy court.  *See* Appellant's RJN, Exs. 2-4.  Debtor's objection to Cheuk Yan's request for judicial notice is therefore overruled as moot.

United States District Court

For the Northern District of California

finding that Eng did not know that Cheuk Yan had a claim against debtor is clearly erroneous.

Due process would normally require that Cheuk Yan, as a known creditor, be provided with formal notice of the bankruptcy proceedings, or, in particular, notice of the claims bar date, to discharge his claim against debtor.[5] *See In re Maya Const. Co.*, 78 F.3d at 1399; *Shu Lun Wu v. May Kwan Si, Inc.*, 508 B.R. 606, 611-12 (S.D.N.Y. 2014) ("the claim of a creditor who is not listed on an individual chapter 11 debtor's schedules will not be discharged unless the creditor had notice of the bankruptcy case in time to file a timely proof of claim") (citing § 523(a)(3)(A)). Although formal notice is lacking, the record supports the bankruptcy court's finding that Cheuk Yan's attorney, Demas Yan, knew of the bankruptcy and "had a hand in making sure that Debtor did not list Cheuk as a creditor or otherwise disclose the existence of a fraudulent transfer liability," warranting application of the judicial estoppel doctrine to Cheuk Yan's argument that his claim is not subject to discharge because he lacked notice of the bankruptcy.

**D.     Estoppel**

The bankruptcy court relied on equitable principles to conclude that Cheuk Yan was estopped from arguing that he was denied due process because he lacked notice of the bankruptcy. Because Cheuk Yan was estopped from arguing lack of notice to waive discharge, the bankruptcy court held that recovery on the judgment entered by the state court in favor of Cheuk Yan against debtor was barred by operation of the discharge injunction. *See In re Am. Hardwoods, Inc.*, 885 F.2d at 626 ("A discharge under section 524(a)(2) does not void *ab initio* a liability. Rather, section 524 constructs a legal bar to its recovery. A discharge is in effect a special type of permanent injunction.").

Cheuk Yan contends that the evidence is insufficient to support the bankruptcy court's finding of estoppel. The parties do not cite authorities governing estoppel principles in bankruptcy. The Ninth Circuit has recognized that the doctrines of equitable estoppel

---

[5]     Because Cheuk Yan was a known creditor, it is not necessary to reach the question whether publication notice is required to discharge an unknown creditor's claims.

and judicial estoppel are applicable in bankruptcy proceedings, and the court considers de novo whether either doctrine of estoppel is available here.

### 1. Equitable Estoppel Doctrine

In *Heritage Hotel Ltd. Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I)*, the Ninth Circuit held that the doctrine of equitable estoppel applies in the bankruptcy context when four elements are satisfied: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the conduct to his injury. *Heritage Hotel Ltd. Partnership I v. Valley Bank of Nevada (In re Heritage Hotel Partnership I)*, 160 B.R. 374, 377 (9th Cir. BAP 1993) (citations omitted), *aff'd*, 59 F.3d 175 (9th Cir. 1995). Applying the doctrine of equitable estoppel to estop a party from taking inconsistent positions where the victim has relied on that party's conduct to its detriment, the Ninth Circuit held that a party is equitably estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statement. *Id.* (citing *Hay v. First Interstate Bank of Kalispell, N.A.*, 978 F.2d 555, 557 (9th Cir. 1992)).

Because the record shows that Eng, debtor's principal, was aware that Cheuk Yan's claim against debtor was not listed, the element of reliance is lacking to support strict application of the doctrine of equitable estoppel in favor of debtor against Cheuk Yan here.

### 2. Judicial Estoppel Doctrine

In *Hamilton v. State Farm Fire & Cas. Co.*, the Ninth Circuit recognized the doctrine of judicial estoppel as an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (citing *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 60001 (9th Cir. 1996); *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990)). As articulated by the Third Circuit, the doctrine of judicial estoppel is distinct from that of equitable estoppel,

in that "[j]udicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties to the prior litigation." *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988). In *Hamilton*, the Ninth Circuit held that the debtor was judicially estopped from pursuing bad faith and breach of contract claims on his homeowners' policy against the insurer, State Farm, where the debtor had clearly asserted inconsistent positions by failing to list his claims against State Farm as assets on his bankruptcy schedules, and then later suing State Farm on the same claims. The court in *Hamilton* invoked judicial estoppel "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of 'general consideration[s] of the orderly administration of justice and regard for the dignity of judicial proceedings,' and to 'protect against a litigant playing fast and loose with the courts.'" *Hamilton*, 270 F.3d at 782 (quoting *Russell*, 893 F.2d at 1037).

The court in *Hamilton* identified three factors articulated by the Supreme Court that courts may consider in determining whether to apply the doctrine of judicial estoppel:

> "[S]everal factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[.] Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus no threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. In enumerating these factors, we do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts. In this case, we simply observe that the factors above firmly tip the balance of equities in favor of barring New Hampshire's present complaint.

*Hamilton*, 270 F.3d at 782-83 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (internal citations and quotation marks omitted)).

The Ninth Circuit has "restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position." *Hamilton*, 270

F.3d at 783 (citing *Interstate Fire & Casualty Co. v. Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998); *Masayesva v. Hale*, 118 F.3d 1371, 1382 (9th Cir. 1997)). "The application of judicial estoppel is not limited to bar the assertion of inconsistent positions in the same litigation, but is also appropriate to bar litigants from making incompatible statements in two different cases. *Id.* (citing *Rissetto*, 94 F.3d at 605 ("We now make it explicit that the doctrine of judicial estoppel is not confined to inconsistent positions taken in the same litigation"); *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990) (estoppel is even more appropriate where the incompatible statements are made in two different cases, since "[i]nconsistent positions in different suits are much harder to justify" than inconsistent pleadings within one suit).

In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements. *Hamilton*, 270 F.3d at 783 (citing *Hay,* 978 F.2d at 557 (failure to give notice of a potential cause of action in bankruptcy schedules and disclosure statements estops the debtor from prosecuting that cause of action); *In re Coastal Plains*, 179 F.3d 197, 208 (5th Cir. 1999) (holding that a debtor is barred from bringing claims not disclosed in its bankruptcy schedules); *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 572 (1st Cir. 1993) (debtor who obtained relief on the representation that no claims existed cannot resurrect such claims and obtain relief on the opposite basis); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3rd Cir. 1988) (debtor's failure to list potential claims against a creditor "worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect," and debtor is estopped by reason of such failure to disclose)). These cases hold that the debtor was estopped from bringing claims that were not listed, but do not provide direct authority for invoking estoppel against a creditor who had actual knowledge of the bankruptcy proceedings and encouraged the debtor not to list the debt. *See Hamilton*, 270 F.3d at 784 ("Judicial estoppel will be imposed when **the debtor** has knowledge of enough

28

facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset.") (emphasis added); *Hay*, 978 F.2d at 557 ("We recognize that all facts were not known to [**the Chapter 11 debtor**] at that time, but enough was known to require notification of the asset to the bankruptcy court."); *In re Coastal Plains*, 179 F.3d at 208 ("[I]f **the debtor** has enough information ... prior to confirmation to suggest that it may have a possible cause of action, then that is a known cause of action such that it must be disclosed") (emphasis added) (citation and internal quotation marks omitted).

Weighing the *Hamilton* factors here, the facts in this case strongly support application of judicial estoppel to bar Cheuk Yan from arguing that he lacked formal notice of the bankruptcy as grounds for waiver of the discharge injunction to bring a post-confirmation claim for fraudulent transfer against debtor.

### 3. Sufficiency of the Evidence to Support Judicial Estoppel

Here, the evidence, demonstrated by affidavits, show that Demas Yan intentionally avoided having his father's claims listed in the bankruptcy by persuading Eng to conceal the potential claims from debtor's bankruptcy attorney and from the proceedings, allowing Demas Yan to later argue lack of notice as grounds for bringing Cheuk Yan's claim after other creditors' claims were discharged in the bankruptcy. Because the factual issues can be decided on affidavits and evidence in the record, the court determines that it is not necessary to conduct an evidentiary hearing on the issue of judicial estoppel. *In re Nicholson*, 435 B.R. 622, 636 (9th Cir. BAP 2010) ("An evidentiary hearing is generally appropriate when there are disputed and material factual issues that the bankruptcy court cannot readily determine from the record."). *See also In re Icenhower*, --- F.3d ----, 2014 WL 2883884, *6 (9th Cir. June 26, 2014) (no due process violation in holding transferees on fraudulent transfer in contempt of court based solely on affidavits where contemnors failed to raise an issue of fact through documentary evidence and did not ask to submit live testimony).

The bankruptcy court held that Cheuk Yan was estopped from claiming a denial of due process when his attorney, Demas Yan, "had much to do with the process of obscuring the existence of the claim." Aug. 5, 2013 Mem. Dec. at 7. Although the bankruptcy court did not strictly articulate whether it was invoking the doctrine of equitable estoppel under *In re Heritage Hotel Partnership I*, or judicial estoppel under *Hamilton*, the facts of this case fit more squarely under the doctrine of judicial estoppel which operates "not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect against a litigant playing fast and loose with the courts." *Hamilton*, 270 F.3d at 782 (citation and internal marks omitted). The record fully supports judicial estoppel of Cheuk Yan's claims "'to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'" *Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013) (quoting *New Hampshire*, 532 U.S. at 749-50), *pet. for reh'g en banc denied*, Oct. 15, 2013.

### a. Demas Yan's Role in Omission of Cheuk Yan's Claim

Eng states that "while acting as my lawyer in other matters, Demas Yan told me to file the Lombard Flats Chapter 11 without listing his father's debt. Also, while acting as my lawyer in other matters, Demas Yan convinced me that I was going to lose Lombard and would be liquidated, so I had nothing to lose by not listing his father's debt." Eng Decl. ¶ 10. To explain why Demas Yan asked Eng not to list Cheuk Yan as a creditor, Eng states that Demas Yan "made a conscious decision not to present his father's claims in the Debtor's Chapter 11 case because of the unsecured status of the claims. I am informed and believe, he wanted to wait for confirmation of the Plan which had the result of clearing the title of numerous junior liens and then seek either a voluntary deed of trust from the Debtor, or a judgment lien through a lawsuit such [as] has been filed by his father." *Id.* ¶ 8.

Demas Yan does not refute Eng's specific statements explaining why Demas Yan did not come forward to present Cheuk Yan's claim before the plan was confirmed. Rather, Demas Yan generally contradicts Eng's affidavit testimony by stating, "ENG did not inform

me of debtor's bankruptcy," and "I have never had coffee or lunch with ENG to discuss bankruptcy cases that he was involved in [and] I did not tell ENG to file debtor's bankruptcy without listing creditor's debt." Demas Yan Decl. ¶¶ 3, 4. Demas Yan's blanket denials are not credible in light of the record, and do not exclude the possibility that Demas Yan suggested to Eng that there was "nothing to lose" by concealing Cheuk Yan's claim. Eng Decl. ¶ 10. Even if Demas Yan's statement, that he "did not tell" Eng to file the Chapter 11 bankruptcy without listing the debt, were credited as true, the evidence shows that Demas Yan knew of the bankruptcy at least by May 2010, before debtor filed the June 12, 2010 combined plan of reorganization and disclosure statement, and before the bankruptcy court entered the order confirming the plan on July 15, 2010, and that he intentionally waited out final confirmation to clear the title of other unsecured claims before bringing Cheuk Yan's claim.

The record also shows that Demas Yan was acting as Eng's personal attorney at the time that he asked Eng not to list Cheuk Yan's claim. Demas Yan does not dispute that he represented Eng in several civil actions, including a lawsuit in San Francisco Superior Court: *Eng v. United Commercial Bank, et al.*, No. CGC 08-482357 (San Francisco Superior Ct., filed Dec. 1, 2008). Eng. Decl. ¶ 7 and Ex. 10. The court takes judicial notice of the state court docket in that case, which shows that Eng initially filed the complaint in pro per and Demas Yan subsequently filed a substitution of counsel as Eng's attorney on December 19, 2008. That case was consolidated with lead case *Eng v. United Commercial Bank, et al.*, No. 08-479286 (San Francisco Superior Ct., filed Aug. 29, 2008), by order filed February 17, 2009.[6] The state court docket indicates that on March 10, 2009, "PARTIES/ATTORNEYS FROM CONSOLIDATED CASE NUMBER 482357 ADDED TO LEAD CASE NUMBER 479286 FOR MAILING OF COURT NOTICES." On June 11, 2009, defendant/cross-complainant United Commercial Bank filed on the state court docket a

---

[6] Eng's consolidated state court action was stayed on December 10, 2009, upon application for a stay by the defendant/cross-complainant Federal Deposit Insurance Corporation, as receiver of United Commercial Bank.

notice of filing of bankruptcy petition by cross-defendant Eng, and subsequently filed a notice of dismissal of bankruptcy proceedings on August 17, 2009.

The notice of bankruptcy that was entered on the state court docket does not include a case number reference to Eng's bankruptcy proceedings. However, the court takes judicial notice of the bankruptcy court's docket which shows that Martin Lee Eng, dba Lombard Flats, LLC and dba Kearny Washington, LLC, filed a pro se Chapter 13 voluntary petition on June 10, 2009. The court takes further judicial notice that the creditor matrix filed by Eng in the Chapter 13 proceedings does not list Cheuk Yan as a creditor. *In re Martin Lee Eng*, No. 09-31600 TEC 13 (docket no. 7, filed June 18, 2009). After the bankruptcy court granted Eng's motion for extension of filing deadlines, Eng's Chapter 13 case was dismissed by order entered August 11, 2009, for failure to comply with the filing requirements by the deadline.

The notice of Eng's bankruptcy that was filed by United Commercial Bank in the consolidated state court action, in which Demas Yan represented Eng, put Demas Yan on notice of Eng's Chapter 13 filing and the fact that Cheuk Yan was not listed as a creditor in that proceeding. Despite Demas Yan's demands on Eng to repay Cheuk Yan's loans and transfer the Lombard Street property, *see* Eng Decl., Exs. 3 and 4, neither Cheuk Yan nor Demas Yan entered an appearance in Eng's Chapter 13 proceeding. This record of earlier proceedings in state court and the bankruptcy court suggests that Demas Yan, who was acting as Eng's attorney in the state court action, was not only aware of Eng's failure to list Cheuk Yan as a creditor, but persuaded Eng not to list the debt to Cheuk Yan. *See* Eng Decl. ¶ 10. Notably, Demas Yan remained Eng's counsel of record in the state court action at the time debtor Lombard Flats filed the Chapter 11 petition on August 3, 2009, eight days before Eng's Chapter 13 case was dismissed.

The record of Eng's court proceedings that preceded debtor's Chapter 11 filing is consistent with the bankruptcy court's credibility determination, discrediting Demas Yan's statement that he did not tell Eng to omit Cheuk Yan from debtor's bankruptcy case, as well as the finding, supported by the evidence presented in Eng's declarations, that Demas Yan

"had a hand" in concealing the existence of fraudulent transfer liability from debtor's bankruptcy proceedings. Furthermore, the evidence supports the bankruptcy court's finding that Demas Yan knew of debtor's Chapter 11 proceedings at least by May 22, 2010, "well before" the Chapter 11 plan was filed and approved, as demonstrated by an email from Eng to Demas Yan asking for help in "BK plan approval." Eng Decl., Ex. 11.[7] Demas Yan did not dispute that he received this email or that he was aware of the bankruptcy at least by May 22, 2010, before confirmation of the plan. The record demonstrates that while Demas Yan was acting as Eng's personal attorney, he used his inside influence to instruct or persuade Eng not to list Cheuk Yan's claim in the bankruptcy, and that even after Eng told him about the pending confirmation of reorganization plan, Demas Yan did not file a late claim or otherwise present Cheuk Yan's claim before the plan was confirmed, so that he could secure an advantage for Cheuk Yan's claim.

The bankruptcy court declined to make a finding as to whether Demas Yan's e-mail reference to Mark Romeo, the attorney for creditor Shirley Chao and the disbursing agent for the reorganization plan, proved that Demas Yan was aware of the Chapter 11 filing as early as August 18, 2009. Eng. Decl., Ex. 5. Demas Yan contended that his reference to Romeo as having done "good research and has proof of all the fraud [Eng] committed," referred to Chao's state court litigation against Eng. Demas Yan Decl. (May 15, 2013) ¶¶ 5, 6. Eng, however, contended that Demas Yan's August 18, 2009, email referred to Chao's motion for relief from the automatic stay in the Chapter 11 case, which was filed August 13, 2009. Suppl. Eng Decl. ¶ 2. The bankruptcy court did not decide this factual dispute and did not rely on this email reference to find that Demas Yan was aware of the

---

[7] Eng's May 22, 2010 email to Demas Yan states, "How can you help in a BK plan approval[?] US trustee opposing[.]" Eng Decl., Ex. 11. The bankruptcy court record reflects that on May 21, 2010, the United States Trustee filed an objection to confirmation of debtor's proposed plan of reorganization that was dated April 26, 2010. After holding a hearing on confirmation of the plan, the bankruptcy court denied confirmation and approval of debtor's plan and disclosure statement by order filed May 27, 2010. The trustee subsequently filed a motion to convert the case to Chapter 7, and debtor filed a third amended Chapter 11 plan on June 15, 2010. The bankruptcy court held a hearing on July 15, 2010, confirming the Chapter 11 plan and denying the trustee's motion to convert as moot.

bankruptcy proceedings shortly after the bankruptcy case was commenced.  Aug. 5, 2013 Mem. Dec. at 4.  Rather, the bankruptcy court found that Demas Yan had knowledge of debtor's Chapter 11 case by May 22, 2010, as evidenced by the uncontroverted email from Eng to Demas Yan.

In view of the record, the factual findings by the bankruptcy court (1) that Demas Yan persuaded Eng not to list Cheuk Yan as a creditor and (2) that Demas Yan knew of the bankruptcy before the reorganization plan was confirmed, are supported by the record and are not clearly erroneous.[8]  *See Anderson*, 470 U.S. at 573.

**b.     Demas Yan's Knowledge Is Imputed to His Client Cheuk Yan**

Cheuk Yan challenges the bankruptcy court's finding that Demas Yan represented Cheuk Yan as his attorney and that Demas Yan's knowledge of bankruptcy was imputed to his client, Cheuk Yan.  Because the issues present mixed questions of law and fact, the court conducts de novo review of whether Demas Yan's knowledge of the bankruptcy, and the omission of Cheuk Yan's claim, is imputed to Cheuk Yan.

Both Demas Yan and Cheuk Yan filed self-serving affidavits stating that Demas Yan was not attorney of record for Cheuk Yan in 2009 or 2010, and that Cheuk Yan did not authorize Demas Yan to accept notices on his behalf.  The evidence in the record, however, demonstrates that Demas Yan acted as either Cheuk Yan's attorney or agent by representing Cheuk Yan in communications with Eng about the debt before and after debtor filed the Chapter 11 petition on August 3, 2009.  Eng Decl. ¶ 3 and Exs. 3-5 ("at all times before, during and after the events described herein, Demas Yan represented his father with respect to the alleged debt the father claims I owe him").

Because debtor concedes that no formal notice of the bankruptcy was provided either to Cheuk Yan or his attorney, Demas Yan, it is not necessary to reach the issue

---

[8]     The court reviews the bankruptcy court's factual findings for clear error, which the parties agree is the applicable standard of review.  Alternatively, if the issues presented fall within the exclusive province of Article III and require de novo review, the court adopts these findings of the bankruptcy court upon making an independent and complete review of the evidence.  *See Executive Benefits Ins. Agency v. Arkinson,* 134 S.Ct. 2165, 2174–75 (2014).

whether Demas Yan was attorney of record for Cheuk Yan for purposes of imputing formal

notice to Cheuk Yan, and this issue is not addressed by Cheuk Yan in his appeal. *Cf.*

Creditor's Opp. to Mot. Contempt at 4 (citing *In re Price*, 871 F.2d 97, 99 (9th Cir. 1989)

(notice to counsel constituted notice to the creditor where counsel was pursuing the same

claim in state court that the creditor sought to have declared nondischargeable)).

Even if Demas Yan was not formally acting as Cheuk Yan's attorney, he was acting

as Cheuk Yan's agent in communications with Eng with respect to the debt, as

demonstrated by the evidence in the record. Applying "the basic rule that a principal is

imputed to have notice of facts known to his agent," Demas Yan's knowledge of the

bankruptcy and the omitted claim is imputed to Cheuk Yan. *Klaus v. Carpenters Pension

Trust*, 137 Cal. App. 3d 988, 504 (1982).

### c.    Because of Demas Yan's Conduct, Cheuk Yan Is Judicially Estopped From Arguing Lack of Notice

If not for Demas Yan's involvement in concealing Cheuk Yan's claim from the

bankruptcy proceedings, the formal notice requirements for a known creditor would have

protected Cheuk Yan's claim from the effects of the discharge injunction. However, Demas

Yan's attempt to manipulate the bankruptcy rules to secure a distinct advantage for his

father's claims, above other unsecured creditors whose claims were discharged in the

reorganization plan, warrant the application of judicial estoppel here. In light of the

evidence demonstrating that Demas Yan had actual knowledge of the bankruptcy before

the plan was confirmed, which knowledge is imputed to Cheuk Yan, that Demas Yan's

actions as Cheuk Yan's agent or attorney resulted in concealing Cheuk Yan's claim from

the bankruptcy so that he could bring his claim after confirmation, and that Demas Yan was

simultaneously representing Eng, Cheuk Yan is estopped from arguing lack of formal notice

as grounds for waiver of the discharge injunction.

The first two *Hamilton* factors support application of the judicial estoppel doctrine

here: Cheuk Yan's late assertion of a fraudulent transfer claim against debtor is "clearly

inconsistent" with his earlier position of concealing his claim from the bankruptcy; and with

35

Eng's complicity, Cheuk Yan succeeded in persuading the bankruptcy court to accept his earlier position that no such claim against debtor existed. The record shows that Eng, as debtor's principal, was aware of Cheuk Yan's potential claim against debtor Lombard Flats and deliberately omitted the debt from the schedule, at the direction or request of Demas Yan. This case therefore presents the issue of judicial estoppel in an unusual posture, in that the debtor's principal played a part in concealing a creditor's claim from the bankruptcy, yet debtor would invoke judicial estoppel to bar the creditor's claims against it. The doctrine of judicial estoppel typically would not be invoked to benefit the debtor who intentionally concealed a creditor's claim, but is warranted here to prevent the creditor and his attorney, Demas Yan, from taking advantage of the bankruptcy proceedings to pursue a claim against debtor after confirmation of a reorganization plan, at the expense of other creditors. *Cf. In re Fugate*, 286 B.R. 778 (Bankr. N.D. Cal. 2002) (denying Chapter 13 debtors' motion to file late claim of creditor whose claim was not scheduled, and declining to force the creditor to participate in a plan to which it never had the chance to object). Here, as in *Hamilton*, "we must invoke judicial estoppel to protect the integrity of the bankruptcy process." 270 F.3d at 785.

In considering the third factor under *Hamilton* for whether the party seeking to assert an inconsistent position would gain "unfair advantage" if not estopped, it appears likely from the record that if Cheuk Yan's claim had been listed with the claims of the other creditors, it would have been discharged with the other unsecured claims in the reorganization plan. Allowing Cheuk Yan to assert his claim after the plan has already been confirmed would not only disrupt the plan but would prejudice the other creditors. The effect of Cheuk Yan's late assertion of his claim was articulated by Mr. Romeo, counsel for one of the creditors and the disbursing agent for the debtor under the plan:

> Chao and the other creditors that ultimately supported the plan of reorganization relied on the financial structure as apparent in the Debtor's plan, including the extent of claims that had to be accounted for. The new claim frustrates Chao's expectations and undermines the consideration that she gave, which were considerable concessions to the Debtor and the estate, in order for the Plan to go forward. Regardless of what the equities may be between the new

36

> claimant, the Debtor, and Mr. Eng, it is fundamentally unfair to the creditors to disrupt the plan after it has been in place for nearly three years. . . . The late appearance and the burdensome expense of this controversy delivers a "bait and switch" to Chao and the other creditors.

June 10, 2013 Response to Motion for Contempt by Creditor Shirley Chao (*In re Lombard Flats, LLC*, Bankr. N.D. Cal. No. 09-32219, doc. no. 146).

It is worth noting that Cheuk Yan does not contend that either Eng or debtor gained any particular advantage by concealing Cheuk Yan's claim from the bankruptcy. The reorganization plan does not protect Eng or discharge his personal debt to Cheuk Yan. Thus, the record shows that Cheuk Yan primarily stood to gain an unfair advantage by having his claim concealed from the bankruptcy, allowing him to argue, as he does now, that he was a known creditor and was not given formal notice of the bankruptcy proceedings, such that his claim is not subject to discharge.

It is worth further noting that the record supports the conclusion that the omission of Cheuk Yan's claim from the schedule was not due to inadvertence or mistake, which may make it "'appropriate to resist application of judicial estoppel.'" *Ah Quin*, 733 F.3d at 271 (quoting *New Hampshire*, 532 U.S. at 753). Rather, Eng's statements that "I thought I was doing Yan a favor by not listing him in this case since he might get almost nothing with or without the bankruptcy[, and] I was concerned that Yan might ruin the bankruptcy as his son threatened," demonstrate Eng's intent to omit the fraudulent transfer claim from the bankruptcy proceedings for Cheuk Yan's benefit, at Demas Yan's request. Eng Decl. (Apr. 30, 2013) ¶ 11. The record also reflects that Demas Yan used his influence as Eng's personal attorney to give Cheuk Yan an advantage over other creditors through this arrangement to conceal his claim and create an opportunity to bring the claim after the reorganization plan was confirmed. These circumstances warrant the application of judicial estoppel to protect the integrity of the bankruptcy process and estop Cheuk Yan from arguing that he lacked notice of the bankruptcy and that his claim was not subject to discharge. *See Hamilton*, 270 F.3d at 785.

Because Cheuk Yan's claim was discharged, his state court judgment against debtor was obtained in violation of the discharge injunction by operation of § 1141(d)(1) and is therefore void pursuant to § 524(a)(1).

## CONCLUSION

For the reasons set forth above, the court AFFIRMS the orders of the bankruptcy court.

**IT IS SO ORDERED.**

Dated:  August 13, 2014

_____
PHYLLIS J. HAMILTON
United States District Judge